IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| KRYSTAL WILCHER, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) |
| v. | ) No. 23-03087-CV-S-BP |
| APT MARKETING, LLC, | ) ) ) |
| Defendant. | ) |

### ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

This case was filed on March 23, 2023, and Defendant was served on April 10, 2023. (Doc. 6.) Counsel entered an appearance for Defendant in May 2023, (Doc. 7), and the parties participated in a Rule 26 conference and jointly proposed a scheduling order. (*See* Doc. 10.)

However, Defendant did not file an Answer within the time allotted by the Federal Rules of Civil Procedure. On January 23, 2024, Plaintiff filed a Motion for Entry of Default. Defendant did not respond, and the time for doing so passed. On February 8, the Court issued an Order to Show Cause, directing Defendant to respond to the Motion by February 16. (Doc. 24.) Defendant did not respond. Accordingly, on February 21, the Court granted Plaintiff's Motion and found Defendant to be in default. (Doc. 25.)

Now pending is Plaintiff's Motion for Default Judgment. Defendant has not responded and the time for doing so has passed. Accordingly, the Motion for Default Judgment, (Doc. 30), is **GRANTED**.[1]

---

[1] The CM/ECF receipts confirm that all filings in the case after Defendant's counsel entered his appearance, including those discussed in this Order, were emailed to the attorneys of record.

Defendant obtained lists of telephone numbers of timeshare owners and called those numbers to sell timeshare termination services.[2] It assumed the companies selling the lists removed all numbers that had been listed on the national do-not-call ("DNC") registry but did nothing to confirm this assumption. When asked to explain why it held this belief, Defendant's owner, Jarrad Gibson, answered "[i]gnorance." (Doc. 30-1, p. 5 (Gibson Dep., p. 14).)

Plaintiff listed her number on the DNC registry. Nonetheless, Defendant called her 94 times. At least five of these calls came after she told one of Defendant's employees that she did not want to receive any more calls.

The Telephone Consumer Protection Act (the "TCPA") authorizes the Federal Trade Commission (the "FTC") to promulgate regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The TCPA also provides a private right of action for any person who receives more than one telephone call within a 12-month period that violates any of the FTC's regulations. *Id*. § 227(c)(5). A person bringing such a suit may recover actual damages or $500 for each violation (whichever is greater), and the amount may be tripled if the Court finds the defendant "willfully or knowingly violated the" regulation. *Id*.

Pursuant to the FTC's regulations, a telephone solicitation may not be initiated to any number listed on the national DNC registry. 47 C.F.R. § 64.1200(c)(2). Here, Defendant has committed 94 such violations. The number of violations and the lack of any serious effort by Defendant to comply with the TCPA persuades the Court that the maximum award is appropriate. Moreover, the Court finds the five violations that occurred after Plaintiff specifically told Defendant to stop calling her were willful. The Court thus awards Plaintiff $500 for 89 of the calls

---

[2] The facts are gleaned from (1) the Complaint, (which Defendant has admitted by virtue of its default), (2) Gibson's deposition, and (3) certain documents Defendant produced during discovery.

and $1,500 for five calls, for a total award of $52,000. The Court also awards Plaintiff costs in the amount of $1,017.25.

**IT IS SO ORDERED.**

Date: September 10, 2024

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT